[No. G006252. Fourth Dist. Div. Three. May 15, 1990.]

NICK OPRIAN et al., Plaintiffs and Appellants, v.
GOLDRICH, KEST AND ASSOCIATES et al., Defendants and
Respondents.

COUNSEL

Nick Oprian and Winifred L. Oprian, in pro. per., Paoli & Paoli, Sylvia L. Paoli, John L. Dodd and Douglas S. Honig for Plaintiffs and Appellants.

Greenberg, Glusker, Fields, Claman & Machtinger, Michael K. Collins, Baker & McKenzie, Joel Mark and Myron Roschko for Defendants and Respondents.

OPINION

MOORE, J.—Nick and Winifred Oprian (collectively Oprian) filed an action for malicious prosecution and civil conspiracy against a real estate development partnership and its attorneys. The lower court granted defendants' motions for summary judgment and dismissed the action. On appeal, Oprian contends the court erred by granting the summary judgment motions because there was a favorable termination in the prior action and triable issues of fact existed as to probable cause and malice. We affirm.

I

FACTS AND PROCEDURAL HISTORY

As stated by Oprian, this action for malicious prosecution and civil conspiracy arose out of a real estate deal gone awry. Oprian owned a parcel of land in Orange County. In 1975, the county advised it was interested in developing a senior citizen housing project on that property, under a housing program administered by the Department of Housing and Urban

Development (HUD), and referred Oprian to Goldrich, Kest and Associates (GKA), a real estate development partnership with extensive experience in developing such projects. Oprian met with Robert I. Stern, a general partner of GKA, who said GKA would be interested in developing the property as a HUD project.[1]

An option contract was entered into between Oprian and Stern on August 27, 1975, giving Stern the right to name a nominee if escrow was opened. The option was for two years, but the parties agreed Stern could elect a one year extension. Thereafter, Stern pursued development of the property as a senior citizen project, making the appropriate applications and submittals to HUD, and filing a proposal for the project. Stern also exercised his right to extend the option for an additional year, until August 27, 1978.

On July 1, 1977, Stern wrote Oprian that it appeared HUD would approve the project. However, in August he learned HUD selected a competing proposal. Since the value of the property had appreciated well above the 1976 option price, Oprian was pleased to learn HUD turned down Stern's proposal. On September 23, he wrote Stern asking about GKA's intentions. Stern wrote back on October 3, informed Oprian he planned to resubmit the application, and predicted HUD would eventually choose the project.

In his October 3 letter, Stern also analyzed the feasibility of using the property for some other purpose, and indicated a willingness to buy the property immediately in order to pursue either a "conventional project and/or a HUD development . . . ." Stern intended the letter to be an exercise of his option, but was advised it might not be effective. Accordingly, he sent Oprian another letter, dated October 13, expressly seeking to exercise the option. Because of Oprian's apparent unwillingness to honor the option, Stern retained Attorney Myron Roschko to advise him of his rights. After being advised of the facts by Stern, and reviewing written documentation, Roschko advised Stern he had a valid option to purchase the property.

Oprian did not immediately respond to Stern's October 3 letter. Since approximately September 15, he had been looking for another buyer, and in late September or early October he began negotiating with a condominium builder. On October 13 Oprian wrote Stern indicating he did not wish to sell the property unless it was to be developed for a HUD project. He asked

---

[1] Oprian's malicious prosecution action was against Stern, his partners Jona Goldrich, Sol Kest and Robert Hirsch, their partnership, GKA, and Jona Goldrich, Trustee of Goldrich Trust No. 1, and Sol Kest, Trustee of Kest Trust No. 1. For convenience, these respondents are sometimes referred to collectively as GKA.

Stern to agree to cancel the option. Four days later, Oprian and the condominium builder opened escrow for the sale of the property to the condominium builder for $315,000, plus $1,000 per unit if the property was resold as raw land.[2] Upon learning Oprian intended to sell the property to the condominium developer, Stern again met with Roschko. Roschko advised Stern he was entitled to purchase the property and, on November 9, Roschko wrote Oprian demanding he agree to exercise of the option, and stating that if he did not Roschko would advise Stern to file a lawsuit and record a lis pendens "which will create a lien on the property and make it unmarketable . . . ." When Oprian refused, Roschko filed a complaint for specific performance and recorded a lis pendens. Stern declared he filed the suit based on Roschko's advice, and believed he had a valid option which Oprian had breached by refusing to sell. He believed the case was meritorious, and that belief was confirmed by his attorney who had fully reviewed the matter.

After the complaint was filed, Oprian sent Stern a letter purporting to rescind the option. He also answered the complaint and filed a cross-complaint for declaratory relief, seeking a determination that HUD approval was a condition precedent to the exercise of the option. Despite the pendency of the litigation and the recorded lis pendens, Oprian sold the property to the condominium developer on October 11, 1978. The developer later conveyed the property to Country Hollow, Ltd., which built condominiums on the property.

Stern later substituted the law firm of Greenberg & Glusker (now Greenberg, Glusker, Fields, Claman and Machtinger [Greenberg]) as his attorneys in place of Roschko, who had no further involvement in the case. The declarations of Stern and the Greenberg attorneys filed in the trial court indicated Stern fully disclosed all of the underlying facts to the attorneys and provided them with documentation and pleadings. Greenberg concluded Stern's specific performance action was meritorious, with an excellent chance of success, and so advised him.

In December 1980, Stern and GKA entered into a settlement with Country Hollow and related entities, agreeing to dismiss the specific performance action and withdraw the lis pendens in return for payment of $357,500. Oprian was not a party to the settlement, and the agreement specifically provided that it did not include any breach of contract claims Stern might have against Oprian.

In the meantime, Oprian amended his cross-complaint to include a cause of action for fraud against GKA and each of its partners, including Stern.

---

[2] Oprian testified the development of the property as a HUD project was important to him because it was the only way he could sell the property for $120,000.

Trial on Stern's complaint and Oprian's cross-complaint began on December 28, 1982, and the jury returned a verdict for Oprian on both the complaint and the cross-complaint, awarding $214,460 compensatory damages and $400,000 punitive damages.

However, in an unpublished opinion filed October 15, 1985, the Fourth Appellate District, Division One, reversed, directing the court to enter judgment on the cross-complaint in favor of all cross-defendants. The Court of Appeal concluded there was no substantial evidence to support the jury's finding of fraud.

At the conclusion of its opinion, the Court of Appeal also directed that Stern's complaint be dismissed, "based on representations of counsel at oral argument." At oral argument, one of the justices asked counsel for Stern and GKA whether he would retry the complaint if the court reversed the judgment on the cross-complaint. Counsel responded he had not discussed the matter with his clients, but that if the judgment on the cross-complaint were reversed Stern and GKA would probably be willing to forego further prosecution of the complaint rather than incur additional attorney's fees and the inconvenience of pursuing a second trial.

On August 25, 1986, Oprian filed the complaint for malicious prosecution and civil conspiracy out of which this appeal arises. A first amended complaint was filed in 1987, naming GKA and its partners, including Stern, and Attorneys Roschko and Greenberg. All defendants filed motions for summary judgment contending, inter alia, the prior action did not result in a favorable determination to Oprian, and there was probable cause to bring the prior action.

The lower court granted the motions, and entered judgments for the defendants on November 6, 1987.

## II

### STANDARD OF REVIEW

■ The granting of summary judgment will only be affirmed if the undisputed material facts " 'conclusively negate a necessary element of the plaintiff's case or establish a complete defense . . .' " to the action. (*Walsh v. Bronson* (1988) 200 Cal.App.3d 259, 264 [245 Cal.Rptr. 888]; Code Civ. Proc., § 437c, subd. (c).) Stated otherwise, a defendant seeking summary judgment must affirmatively negate at least one essential element of every cause of action. (*Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo,*

*Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670].)

■    To establish a cause of action for malicious prosecution, Oprian was required to demonstrate the existence of a triable issue of fact with respect to each of the necessary elements: that the prior action: (1) terminated in his favor, (2) was filed without probable cause and, (3) was initiated by the defendants with malice.  ■ ■ ■ ■    (*Walsh* v. *Bronson, supra,* 200 Cal.App.3d at pp. 263, 264; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)[3]

■    Oprian contends a favorable termination of the prior action was established, and that there were triable issues as to the elements of probable cause and malice. We conclude that, as a matter of law, there was no favorable termination of the prior action.

### III

### FAVORABLE TERMINATION

An essential element of a cause of action for malicious prosecution is favorable termination of the prior action. (*Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 50.)  ■    Oprian agrees, as he must, a dismissal on technical grounds for procedural reasons does not constitute a favorable termination. Moreover, where the proceeding terminates by agreement, without regard to its merits, there is no favorable termination. (*Webb* v. *Youmans* (1967) 248 Cal.App.2d 851, 853 [57 Cal.Rptr. 11]. See also *Jaffe* v. *Stone* (1941) 18 Cal.2d 146, 150 [114 P.2d 335, 135 A.L.R. 775] [to be favorable, the termination must indicate the innocence of the accused].) "Where a proceeding is terminated other than on its merits, the reasons underlying the termination must be examined to see if it reflects the opinion of either the court or the prosecuting party that the action would not succeed. [Citations.]." (*Haight* v. *Handweiler* (1988) 199 Cal.App.3d 85, 88 [244 Cal.Rptr. 488].)

■    Here, the specific performance action brought by Stern terminated in a $357,500 settlement with Country Hollow, Oprian's successor-in-

---

[3] Oprian sometimes refers to this action as one for "abuse of process." We assume this is inadvertent error. An action for abuse of process is established only where the process is abused or misused for a purpose other than that for which it is designed. (*Friedman* v. *Stadum* (1985) 171 Cal.App.3d 775, 779 [217 Cal.Rptr. 585].) The mere filing of an action and the recordation of a lis pendens would not support an action for abuse of process. (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 [232 Cal.Rptr. 567, 728 P.2d 1202].)

interest in the property. As part of the settlement, Stern withdrew the lis pendens and dismissed the specific performance claim. Thus, that action did not terminate in Oprian's favor. The same is true of the breach of contract action. The court of appeal directed the complaint be dismissed, "based on representations of counsel at oral argument." The nature of the representation is explained in the declaration of Stern's counsel, which Oprian does not contradict. During oral argument, one of the justices asked counsel if the judgment on the cross-complaint for fraud were reversed with directions to enter judgment in favor of Stern, would he retry the complaint? Counsel responded that under those circumstances he believed his clients would forego further prosecution of the complaint in order to avoid further attorney's fees and the inconvenience of a second trial, although he believed the action was meritorious.

*Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967 [227 Cal.Rptr. 718] is instructive: " 'If [the dismissal] is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is on technical grounds, for procedural reasons, or for any other reason not inconsistent with his guilt, it does not constitute a favorable termination.' " (*Id.* at p. 976.)

The dismissal of Stern's complaint following oral argument was not on the merits. At the time, the specific performance claim had been settled and Stern's complaint had been amended to state a claim for damages for breach of contract. Oprian concedes the dismissal was voluntary and that "said dismissal was entered not on the merits of the underlying action." Nor did the dismissal reflect the opinion of the court that Stern's complaint would not succeed on retrial. Had the court found that the complaint was based on reversible error or was without substance, it would most certainly have reversed the judgment on the complaint. (See, e.g., *John B. Gunn Law Corp.* v. *Maynard* (1987) 189 Cal.App.3d 1565, 1573 [235 Cal.Rptr. 180].) Here, however, having determined to reverse the jury's verdict in favor of Oprian on the cross-complaint, the court of appeal merely inquired as to whether counsel would be willing to dismiss the complaint if the judgment on the cross-complaint were reversed.

It would be a sad day indeed if a litigant and his or her attorney could not dismiss an action to avoid further fees and costs, simply because they were fearful such a dismissal would result in a malicious prosecution action. It is common knowledge that costs of litigation, such as attorney's fees, costs of expert witnesses, and other expenses, have become staggering. The law favors the resolution of disputes. "This policy would be ill-served by a rule which would virtually compel the plaintiff to continue his litigation in order to place himself in the best posture for defense of a malicious prosecution

action." (*Leonardini* v. *Shell Oil Co.* (1989) 216 Cal.App.3d 547 at p. 571 [264 Cal.Rptr. 883].)

Stern, GKA and their counsel agreed to dismiss the complaint against Oprian if they received a favorable determination on the cross-complaint. The motivation was to avoid the payment of further attorney's fees and court costs and the inconvenience of a second trial. Clearly the dismissal was not on the merits and resulted from a practical decision that further litigation was too expensive to pursue.

■ ■■■ Accordingly, Oprian did not establish that the underlying cause of action terminated in his favor, and the motions of all defendants for summary judgment were properly granted on that basis alone.[4]

The judgments of the lower court are affirmed. Respondents shall recover their costs on appeal.[5]

Sonenshine, Acting P. J., and Wallin, J., concurred.

A petition for a rehearing was denied May 31, 1990.

---

[4]Because respondents' initiation of the underlying lawsuit did not constitute malicious prosecution, Oprian's conspiracy cause of action must also fail: "There is no cause of action for conspiracy per se, and a civil conspiracy does not give rise to a cause of action 'unless a civil wrong has been committed . . . .' [Citations.]" (*Walsh* v. *Bronson, supra,* 200 Cal.App.3d at p. 271.)

The issues of probable cause and malice need not be reached. However, recent case law limits the determination of probable cause to an objective standard. In this case, we would not hesitate to find respondents had probable cause to initiate the underlying suit. (See *Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498]; *Klein* v. *Oakland Raiders, Ltd.* (1989) 211 Cal.App.3d 67 [259 Cal.Rptr. 149]; *Leonardini* v. *Shell Oil Co., supra,* 216 Cal.App.3d 547.)

[5]Because we do not find the appeal to be indisputably without merit, respondents' request for sanctions is denied. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 [183 Cal.Rptr. 508, 646 P.2d 179].)