Filed 11/14/14  Purcell-Murray v. Clark Law Group CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PURCELL-MURRAY CO., INC.,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>CLARK LAW GROUP et al.,<br><br>     Defendants and Appellants. | A139264<br><br>(San Mateo County<br>Super. Ct. No. CIV520000) |

## INTRODUCTION

Defendants the Clark Law Group (Clark) and Water, Inc. (Water) appeal from the order denying their special motion to strike the malicious prosecution action filed against them by plaintiff Purcell-Murray Company, Inc. (PMC) as a strategic lawsuit against public participation (SLAPP) under Code of Civil Procedure section 425.16 (section 425.16).[1]  Defendants argue the trial court erred in denying their anti-SLAPP motion because PMC did not meet its burden of establishing a probability of prevailing on the merits of its malicious prosecution lawsuit.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I. The Underlying Action

PMC is a distributor of premium kitchen and bath products, including the Everpure brand of water filtration products manufactured by Pentair Residential Filtration, LLC (Everpure).  Everpure appointed PMC as its distributor for the states of

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

1

California, Arizona, and Nevada effective September 1, 2008. Previously, Water had long been the exclusive distributor of Everpure water filtration products in California and other western states.

Alleging that Everpure had misappropriated Water's business model and intended to compete with Water, Water filed an earlier lawsuit against Everpure in federal district court. The two parties resolved the dispute by signing a "Mutual Termination Agreement and Release" (Termination Agreement) on July 31, 2008. Under this agreement, Everpure was allowed to designate another company as the exclusive distributor of Everpure products. However, Water was given the right to purchase Everpure replacement cartridges for an undetermined period.

Within months, Everpure advised Water and, more importantly, Water's customers, that Water would no longer be providing Everpure products. In January 2009, Everpure contacted some of Water's customers by letter to inform them that PMC was its new distributor and that Water was "no longer an authorized distributor of any type for Everpure, and has not been an authorized Everpure distributor since August 1, 2008." On March 18, 2009, Everpure informed Water that it was terminating Water's right to sell Everpure products because it believed Water was selling another manufacturer's cartridges and communicating to customers that it was still an Everpure distributor.[2] Everpure also claimed Water had not purchased a substantial amount of cartridges from it since August 2008.

On May 13, 2009, Water, represented by Clark attorneys, filed a new complaint in the federal court for the Central District of California. It is this complaint that has generated the instant malicious prosecution action. All 19 of the causes of action stated in the complaint were made against Everpure. Thirteen of these 19 causes of action were

---

[2] Reportedly, Water sought to convert customers to its new water filtration product, which went by the name "Body Glove."

also alleged against PMC, including various economic torts and three antitrust claims.[3] The litigation centered on Water's contention that Everpure and PMC had acted in contravention of the Termination Agreement.

On July 20, 2009, PMC filed a motion for judgment on the pleadings as to the antitrust claims pled against it.

On October 28, 2009, the district court filed its order granting PMC's motion to dismiss the three antitrust claims. Water was granted leave to amend.

On November 9, 2009, Clark filed a First Amended Complaint (FAC) on behalf of Water. The FAC states 10 causes of action against PMC. It omits the three antitrust claims.

On May 31, 2011, Water filed a motion to supplement the FAC to add claims that Everpure's products were uncertified by the California Department of Public Health.

On August 23, 2011, the district court granted Everpure's and PMC's motions to dismiss the supplemental claims. Water was given leave to amend all but one of these claims.

On September 2, 2011, Water filed an amended supplemental complaint against Everpure and PMC, purporting to supplement the FAC with two additional causes of action.

On September 21, 2011, Everpure and PMC filed motions to dismiss the amended supplemental complaint.

On October 18, 2011, the district court granted Everpure's and PMC's separate motions to dismiss the supplemental claims without leave to amend.

Everpure and PMC each filed motions for summary judgment as to all remaining claims. PMC moved for summary judgment and judgment on the pleadings on the claims

_____

[3] These claims were for violation of the Sherman Anti-Trust Act (15 U.S.C. §§ 1, 2), violation of the Clayton Act (15 U.S.C. § 14), and violation of the Cartwright Act (Bus. & Prof. Code, § 16700 et seq.).

3

stated against it, arguing that its potential liability turned solely on whether Water had any viable claims against Everpure. PMC contended Water had failed to specifically identify any wrongful conduct by PMC itself.

On December 19, 2011, the district court filed a 47-page ruling, granting both motions for summary judgment. The court dismissed the FAC with prejudice and denied leave to amend. The court noted the key facts, namely, the Termination Agreement and Everpure's January 2009 letter to customers, did not involve any conduct by PMC. Additionally, the court observed Water had not separately responded to PMC's summary judgment motion.

On February 21, 2012, the district court entered judgment in favor of PMC and against Water.

On September 17, 2012, Water filed a notice of appeal as to the February 21, 2012 judgment. Federal Rules of Appellate Procedure require that any appeal be filed within 30 days of entry of judgment. (Fed. Rules App.Proc., rule 4(a)(1).)

On October 29, 2012, PMC filed a motion to dismiss the appeal for lack of jurisdiction.

On January 25, 2013, the Ninth Circuit issued an order granting PMC's motion and dismissing the appeal.

On February 14, 2013, PMC's Managing Director Matthew Murray added his signature to a "Settlement Agreement" purporting to resolve the federal action filed by Water. This agreement was signed by Water and Everpure representatives without words of limitation, but contained the following typed words above Murray's signature: "[PMC] hereby acknowledges receipt of this Settlement Agreement and hereby agrees to be bound by the terms of the confidentiality agreement as set forth in Paragraph 7."

4

## II. The Current Action

On February 20, 2013, PMC filed its complaint against defendants, alleging causes of action for malicious prosecution, negligent interference with economic advantage, and intentional interference with prospective economic advantage.

On March 27, 2013, defendants filed a motion to strike PMC's complaint under section 425.16.

On June 17, 2013, the trial court issued its order granting the motion as to the two business torts pursuant to the litigation privilege of Civil Code section 47, subdivision (b). It denied the motion directed to the cause of action for malicious prosecution. This appeal followed.

## DISCUSSION

### I. Anti-SLAPP Motions

An anti-SLAPP motion is a special statutory "procedure for striking meritless, chilling causes of action at the earliest possible stages of litigation." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 443.) If the defendant makes the "threshold showing that the challenged cause of action is one 'arising from protected activity' " (*ibid.*), then "the burden shifts to the plaintiff to demonstrate a reasonable probability of prevailing on the merits of his cause of action. [Citations.] 'Put another way, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.]' [Citations.] The role of the trial court is not to weigh the credibility or comparative strength of the parties' evidence; rather, it determines whether the defendant's evidence defeats the plaintiff's prima facie showing as a matter of law. [Citation.]" (*Trapp v. Naiman* (2013) 218 Cal.App.4th 113, 119.)

In *Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, the court explained the standard of review applicable to an order granting or denying an anti-

5

SLAPP motion: We review such an order "de novo, applying the same two-step procedure as the trial court. [Citation.] We look at the pleadings and declarations, accepting as true the evidence that favors the plaintiff and evaluating the defendant's evidence ' "only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.] The plaintiff's cause of action needs to have only ' "minimal merit" [citation]' to survive an anti-SLAPP motion. [Citation.]" (*Id.* at p. 1105.)

The first step of the anti-SLAPP analysis is not at issue here. "[B]y its terms, section 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch. By definition, a malicious prosecution suit alleges that the defendant committed a tort by filing a lawsuit. [Citation.] Accordingly, every Court of Appeal that has addressed the question has concluded that malicious prosecution causes of action fall within the purview of the anti-SLAPP statute. [Citations.]" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 734-735, fn. omitted (*Jarrow*).) Here, the parties do not contest that the challenged action arises from protected activity. Accordingly, we turn to the merits of PMC's malicious prosecution claim.

## II. *Malicious Prosecution*

To prevail on a malicious prosecution claim, a plaintiff must show that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought or continued without probable cause; and (3) was initiated with malice. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 965, 970 (*Zamos*).) Water, represented on appeal by Clark, contends PMC did not demonstrate either that the federal action lacked probable cause, or that it was brought or maintained with malice. It further asserts the action is barred by the terms of the February 2013 settlement agreement. Clark additionally argues PMC failed to show it

6

obtained a favorable termination as to the three antitrust claims.  We address this last assertion first.[4]

## A. *Favorable Termination*

Clark claims Water's "voluntary abandonment" of the antitrust claims does not satisfy the favorable termination element of the malicious prosecution tort.  We note Clark did not raise this ground in its motion to the trial court.  "Generally, failure to raise an issue or argument in the trial court waives the point on appeal." (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 412, italics omitted.)  Thus, the argument is forfeited. Regardless, the argument fails.

To determine whether the malicious prosecution plaintiff received a favorable termination, the court considers the judgment as a whole in the prior action.  (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341 (*Casa Herrera*).)  However, victory following a trial on the merits is not required.  Rather, the termination simply must reflect the merits of the action and indicate that the plaintiff is innocent of the alleged misconduct.  (*Siebel v. Mittlesteadt* (2007) 41 Cal.4th 735, 741.)

Where, as here with respect to the three antitrust claims, a termination is by dismissal, the termination is deemed favorable when it reflects the opinion of either the trial court or the prosecuting party that the action either lacked merit or, if pursued, would result in a decision in favor of the defendant.  (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1056.)  Thus, the reasons for the dismissal must be examined.  For example, a voluntary dismissal may be an implicit concession that the dismissing party cannot maintain the action.  (*JSJ Limited Partnership v. Mehrban* (2012) 205 Cal.App.4th 1512, 1524.)  However, a technical or procedural termination, reflecting neither innocence of nor responsibility for the alleged misconduct, is not favorable for purposes of a malicious prosecution claim.  (*Casa Herrera, supra,* 32 Cal.4th at pp. 341-

---

[4] PMC's request that we dismiss Clark's appeal due to the untimeliness of the filing of its opening brief is denied.

342.) Examples of technical or procedural dismissals include dismissals on statute of limitations grounds, pursuant to a settlement, or based on laches. (*Id*. at p. 342.) Here, the dismissal was based on the merits and not on technical or procedural grounds.

Specifically, the district court's order dismissing the antitrust claims states, in part: "Water has alleged no antitrust injury here. Water alleges injury from Everpure's refusal to sell it Everpure products, for informing customers that Water was not authorized to sell Everpure products, and by using rebates . . . to force customers not to do business with Water. Whatever injury those actions might inflict on Water individually, Water does not allege that consumers have been harmed in the marketplace." While the court did grant leave to amend these claims, it observed "[b]ased on the above discussion, the Court fears this effort might be a Sisyphean task." Further, although the court had written no less than nine pages documenting the multiple flaws contained in Water's causes of action, it noted it still had not pointed out every deficiency.

Clark relies on *Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337 (*Oprian*) in arguing that Water's decision to forgo amending the complaint after the antitrust actions had been dismissed did not constitute a favorable termination because Water's decision was made solely to avoid costly litigation. In *Oprian,* the underlying plaintiff's complaint against Oprian was for breach of contract and Oprian cross-complained for fraud; the jury found against plaintiff on the complaint and in favor of Oprian on the cross-complaint. On appeal, the appellate court asked plaintiff's counsel whether, assuming the court reversed with directions to enter judgment against Oprian on the cross-complaint, the plaintiff would retry his complaint against Oprian. After counsel indicated that under those circumstances his client would not endure the expense of a new trial even though the complaint was meritorious, the court directed the complaint be dismissed. (*Oprian, supra,* 220 Cal.App.3d 337, 342-344.) *Oprian* stands for the unremarkable proposition that when a plaintiff agrees to voluntarily dismiss his complaint, the favorable termination element is not satisfied. It does not hold that a

8

voluntary dismissal occurs when a plaintiff elects not to pursue filing an amended complaint after his or her claims have been dismissed on their merits.

In asserting Water voluntarily abandoned those claims solely because it could not afford to continue with the antitrust causes of action after the district court granted it leave to amend, Clark fails to apprehend that these claims were not "abandoned" until *after* PMC incurred the expense of having to file a motion to dismiss them. The district court evidently found PMC's motion to be meritorious. The fact that the court granted leave to amend does not negate the fact that the claims, as set forth by Clark on behalf of Water, were found to be seriously deficient. A reasonable fact finder could thus conclude defendants' decision to abandon these claims constituted an acknowledgement the action lacked merit. (*Ross v. Kish* (2006) 145 Cal.App.4th 188, 200 (*Ross*).) In short, Clark's attempt to dispute the element of favorable termination fails.

### B. Lack of Probable Cause

Defendants claim the court below erred in relying solely upon the conclusions of the district court to the effect that the there was no admissible evidence to substantiate Water's claims against PMC in the federal action. Even if this contention has merit, our own review of the record on appeal supports the trial court's ultimate finding.

### 1. General Principles

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.' [Citation.] 'A litigant will lack probable cause for his action either if he relies upon facts which he has no reasonable cause to believe to be true, or if he seeks recovery upon a legal theory which is untenable under the facts known to him.' [Citation.] 'In a situation of complete absence of supporting evidence, it cannot be adjudged reasonable to prosecute a claim.' [Citation.] Probable cause, moreover, must exist for every cause of action advanced in the underlying action. '[A]n action for malicious prosecution lies when but one of alternate theories of recovery is maliciously asserted . . . .' [Citations.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th

9

260, 292.)  Probable cause "is ' "a suspicion founded upon circumstances sufficiently strong to warrant a reasonable man in the belief that the charge is true." ' [Citations.]" (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 55.)

"Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed.  '[T]he standard of probable cause to bring a civil suit [is] equivalent to that for determining the frivolousness of an appeal [citation], i.e., probable cause exists if "any reasonable attorney would have thought the claim tenable." [Citation.]  This rather lenient standard for bringing a civil action reflects "the important public policy of avoiding the chilling of novel or debatable legal claims." [Citation.]  Attorneys and litigants . . . " 'have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' " [Citations.]  Only those actions that " 'any reasonable attorney would agree [are] totally and completely without merit' " may form the basis for a malicious prosecution suit.  [Citation.]' [Citation.]" (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047-1048.)

To make a prima facie case of a lack of probable cause in response to the anti-SLAPP motion, PMC must submit substantial evidence showing no reasonable attorney would have thought the action was tenable in light of the facts known to defendants at the time the suit was filed  (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817, 822, fn. 6; *Ross, supra,* 145 Cal.App.4th at p. 202), or that defendants continued pursuing the lawsuit after they had discovered the action lacked probable cause.  (*Zamos, supra,* 32 Cal.4th at pp. 966-970.)  However, "[w]here there is no dispute as to the facts upon which an attorney acted in filing [or prosecuting] the prior action, the question of whether there was probable cause to institute [or continue prosecuting] that action is purely legal.  [Citations.]  If there is a dispute as to such facts, that dispute must be resolved by the trier of fact before the objective standard can be applied by the court. [Citations.]" (*Ross, supra,* 145 Cal.App.4th at p. 202.)

10

Defendants claim PMC failed to satisfy its burden of proof to establish that any aspect of Water's federal action lacked probable cause. They assert Water had probable cause to file the federal district court action because Everpure and PMC "misled customers into believing that Water no longer had the right to sell or promote Everpure products." As evidence in support of this assertion, it cites, in part, to the January 2009 letter Everpure sent to its dealers indicating that Water was no longer an authorized distributor. It also cites to a December 12, 2008 draft letter written by Tom Boor, Director of Sales for Everpure. This letter also clarifies that PMC would be the new master distributor and was apparently given to PMC to transmit to dealers. Water argues on appeal that the federal lawsuit was initiated because the letters did not include a disclosure of Water's continued right to sell Everpure products as set forth in the Termination Agreement. In response, PMC does not assert that the entire complaint was brought without probable cause. Instead, it draws our attention to the causes of action for defamation and antitrust, as well as the claims stated in the supplemental complaint.

## 2. Defamation Claim

" 'Defamation is an invasion of the interest in reputation. The tort involves the intentional publication of a statement of fact which is false, unprivileged, and has a natural tendency to injure or which causes special damage.' [Citation.]" (*Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 27.) Defamation has two forms, libel and slander. (Civ. Code, § 44.) Defamatory publications that are made "by writing, printing, picture, effigy, or other fixed representation to the eye," are considered libel. (Civ. Code, § 45.) Our Supreme Court has stated "that libel includes 'almost any language which, upon its face, has a natural tendency to injure a person's reputation. [Citations.]' [Citation.]" (*Slaughter v. Friedman* (1982) 32 Cal.3d 149, 153.) Slander involves defamatory publications that are "orally uttered," and also includes "communications by radio or any mechanical or other means . . . ." (Civ. Code, § 46.)

11

The federal complaint alleges a cause of action for defamation against both Everpure and PMC. The complaint asserts the following false statements were published: "1) [Water] was no longer authorized to sell 'Everpure' products; 2) customers could only purchase 'Everpure' products through [PMC] as the exclusive provider of 'Everpure' products in the Western United States; 3) that [Water] was selling 'counterfeit' 'Everpure' products; and 4) that [Water] had 'falsely advertised' its products."

As noted above, defamation requires the intentional publication of a false statement of fact that has a natural tendency to injure the plaintiff's reputation. (*Smith v. Maldonado* (1999) 72 Cal.App.4th 637, 645; *Raghavan v. Boeing Co.* (2005) 133 Cal.App.4th 1120, 1132.) The January 2009 letter from Everpure to its customers states, in part: "Water, Inc. has decided to take on a line that is competitive with Everpure products. Thus, while we have worked closely with Water, Inc. in the past as our Master Distributor, Water Inc. and Everpure are now competitors in this marketplace and we wanted to make sure that you fully understand the situation. As part of the separation, Water, Inc. must discontinue using any Everpure materials, displays, etc. We would appreciate your cooperation in this regard." The draft letter dated December 12, 2008 contains a virtually identical passage. Significantly, neither letter accuses Water of selling counterfeit products or engaging in false advertising practices. While such statements could have potentially been deemed defamatory, we are unable to discern any defamatory content in the two letters.

Once a plaintiff makes a prima facie showing of facts that would support a judgment in its favor, the court will "consider[] the defendant's opposing evidence, but only to determine if it defeats the plaintiff's showing as a matter of law. [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.) The evidence presented by defendants does not do so. In granting the motion for summary judgment, the district court observed that while Water claimed Everpure committed commercial disparagement

12

and defamation by telling customers that Water's cartridges were "counterfeit" and "knock-offs," Water had offered no admissible evidence that Everpure had actually published such statements to any of its customers. Additionally, Water had offered no evidence that the alleged statements were false statements of fact, rather than non-actionable opinions on the quality of Water's cartridges.[5] Finally, the court noted Water had not substantiated the allegation that Everpure had accused Water of falsely advertising its products.

Water asserts "[t]he issue presented was whether [Everpure and PMC] misrepresented that Water was no longer authorized to sell Everpure cartridges, and that therefore dealers could only purchase Everpure from [PMC] as the exclusive provider in the Western United States." Even as framed, these contentions do not support an inference that any defamatory statements were made. At best, they suggest that Everpure's letters contained statements that were factually misleading, as opposed to statements that would tend to injure Water's reputation.

Similarly, a declaration prepared by Roger W. Clark in connection with the anti-SLAPP motion states that before filing the federal lawsuit, he obtained information that PMC representatives had told dealers they could no longer purchase any Everpure product from Water and placed them under " 'extreme pressures' " to purchase only from PMC. However, Water concedes it did not submit a declaration from any such dealer in opposition to PMC's motion for summary judgment. Thus there appears to have been no admissible evidence that any dealer received any communication from PMC or Everpure that could have been perceived as defamatory. While Water faults PMC for failing to submit a declaration or deposition testimony from any of the dealers establishing that these alleged misrepresentations were *not* made, the existence of a misrepresentation is

---

[5] Only statements of fact are actionable as defamation, while statements of opinion are constitutionally protected. (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 384.)

13

not relevant in a defamation action if the alleged misrepresentations are not defamatory in nature.

As to the allegation regarding false advertising, included as an exhibit to Clark's declaration is a letter to a representative of Water from a customer named Linda M. Smith, who reported that after she noticed water coming from the bottom of her "Everhot" Everpure water system, she contacted Everpure and was told that this was " 'not their product and never has been' " and had been " 'advertised falsely.' "  This statement is hearsay and is inadmissible as evidence.  Similarly, there is no evidence that statements concerning "counterfeit" Everpure cartridges were ever actually made to any of Water's customers.  Again, defendants have not set forth any admissible evidence that PMC representatives made any defamatory statements.[6]

Accordingly, we conclude PMC has satisfactorily demonstrated, for purposes of this appeal, that defendants lacked probable cause to pursue the action for defamation. Probable cause must exist not only at the commencement of the action, but also at every stage thereafter, and on every claim asserted.  (*Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596-597.)  We conclude that the complete absence of admissible evidence as to the making of a defamatory statement by the time of the dispositive motion for summary judgment supports a finding that defendants lacked probable cause to continue the defamation action.

### 3. The Antitrust Claims

We find an even stronger case with respect to the federal action's antitrust claims. While the district court gave Water leave to amend after granting PMC's motion for

---

[6] We note the district court found the deposition testimony of Wayne Feltenberger, a Water salesman who testified customers told him that PMC representatives had disparaged Water's cartridges, to be inadmissible hearsay.  Water questions that ruling in a footnote in its brief on appeal, claiming the statements had not been offered to prove their truth.  The district court's ruling was sound as the testimony was offered to prove the truth of the matter stated, namely, that PMC representatives had indeed made the allegedly defamatory utterances.

judgment on the pleadings, such a ruling does not support the inference that Water had probable cause to bring the claims in the first place.

As we noted above, the district court found Water had failed to allege antitrust injury. As an absolute threshold to stating an antitrust claim, a party must allege "antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." (*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.* (1977) 429 U.S. 477, 489, italics omitted (*Brunswick*).) This injury, which must result from the alleged antitrust violation, must be injury to "the market or to competition in general, not merely injury to individuals or individual firms . . . ." (*McGlinchy v. Shell Chemical Co.* (9th Cir. 1988) 845 F.2d 802, 812.) The "failure to allege injury to competition is a proper ground for dismissal by judgment on the pleadings." (*Id*. at p. 813.)

It is established that an exclusive distributorship agreement between a manufacturer and a distributor causing harm to another distributor is not, standing alone, sufficient to show antitrust injury. (*Rutman Wine Co. v. E. & J. Gallo Winery* (9th Cir. 1987) 829 F.2d 729, 735 (*Rutman*).) Rather, there is no violation unless the agreement is intended to or actually does harm competition in the relevant market. (*Ibid*.) Antitrust laws "were enacted for 'the protection of competition, not competitors.' " (*Brunswick, supra,* 429 U.S. at p. 488, italics omitted.) The intent to harm a particular competitor is not actionable, even if a distributor-competitor is put out of business. (*Rutman, supra,* 829 F.2d at p. 735; see also *Dunn & Mavis, Inc. v. Nu-Car Driveaway, Inc.* (6th Cir. 1982) 691 F.2d 241, 243-244.) Therefore, an exclusive distributorship agreement does not give rise to the requisite inference of intent to harm competition. (See *Rutman, supra,* 829 F.2d at p. 736.) Even if there were a conspiracy to shut out Water, there would not necessarily be an antitrust violation absent an anticompetitive effect on the industry as a whole. (See *Oreck Corp. v. Whirlpool Corp.* (2d Cir. 1978) 579 F.2d 126, 130, fn. 4.)

On appeal, defendants offer no evidence to support an argument that the antitrust claims had any basis in law or fact. Instead, they argue that the decision to forgo amending the complaint is the equivalent of a voluntary dismissal done merely for financial reasons. While a declaration prepared by Roger W. Clark in support of defendants' anti-SLAPP motion states that Water could have cured some of the defects identified by the district court, he does not provide any elaboration. He also unconvincingly asserts the district court's substantive conclusions were flawed. Importantly, he offers little to dispute the court's finding that Water's claims failed to properly allege an antitrust injury, instead of just an injury to itself as an individual competitor in the market. He also claims the district court erred in that it narrowly interpreted the complaint's allegation of a tying arrangement, however he does not set forth any evidence or legal argument in support of this assertion.

The district court's analysis was extremely comprehensive, and defendants offer no factual or legal grounds to undermine the basis of the court's findings and conclusions.[7] In sum, for purposes of this appeal, PMC has satisfactorily demonstrated that defendants lacked probable cause to bring the antitrust claims against it. Having so concluded, we need not address PMC's arguments concerning the supplemental complaint.

### C. Malice

Defendants assert PMC did not make a prima facie showing of malice. Although the element of malice is satisfied by showing actual hostility or ill will (*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 494 (*Downey Venture*)), it can also be satisfied by showing the action was initiated primarily for an improper purpose. (*Sierra*

---

[7] We observe " '[t]he malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice.' [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 677.)

16

*Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157.) Malice can be shown by direct evidence or may be inferred from all of the circumstances of the case (*Northrup v. Baker* (1962) 202 Cal.App.2d 347, 355), and is ultimately a question of fact for the jury. (*Sheldon Appel Co. v. Albert & Oliker,* 47 Cal.3d 863, 874.) Although the fact the defendant did not have probable cause to initiate or continue the defamation and antitrust claims does not alone suffice to show malice (*Downey Venture, supra*, at p. 498, fn. 29), the absence of probable cause may be considered by the jury when assessing the issue of malice. (*Swat-Fame, Inc. v. Goldstein,* 101 Cal.App.4th 613, 633.)

The trial court inferred malice based on its finding that "[t]hroughout the extensive discovery process, [Water] should have come to the conclusion that it had no admissible evidence to support these claims, yet continued to prosecute the action." We agree PMC has satisfied the minimal burden placed on a plaintiff responding to an anti-SLAPP motion.[8] Going forward, the jury may consider the absence of probable cause for claims against PMC in the federal litigation as evidence of malice.

Defendants rely on *Daniels v. Robbins* (2010) 182 Cal.App.4th 204 (*Daniels*) and *Jarrow, supra,* 31 Cal.4th 728. The precise holding in *Jarrow* was that obtaining summary judgment on a complaint in the underlying litigation does not, standing alone, establish malice as a matter of law. (*Jarrow, supra,* 31 Cal.4th at p. 743.) We note that *Daniels* concerned the affirmance of a trial court's order granting the defendants' anti-SLAPP motion. Here, we have an order of the trial court denying defendants' motion. From the history summarized above, it can be inferred that defendants prosecuted certain claims against PMC after becoming aware these claims lacked probable cause, both

---

[8] The probability-of-success stage requires a plaintiff only to prove the challenged cause of action has "minimal merit." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 93-94.) The court does not weigh the evidence submitted by each side (*Wilson v. Parker, Covert & Chidester, supra,* 28 Cal.4th at pp. 821-822), but only decides whether evidence exists that, if credited by a jury, would support a judgment in favor of the plaintiff. (*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 93-94.)

17

legally and factually. Viewing the evidence in the light most favorable to PMC, its assertion that defendants acted with malice has at least minimal merit. (*Soukup, supra,* 39 Cal.4th at p. 291.)

While not overwhelming, there is sufficient circumstantial evidence from which a trier of fact could conclude the litigation was pursued against PMC for an ulterior purpose not related to the remedy Water sought in the federal lawsuit. Specifically, there is circumstantial evidence from which the jury could infer PMC was pursued for the ulterior purpose of derailing the distribution agreement it had with Everpure. We note that the federal litigation appears to have been primarily directed at Everpure, raising an inference of an ulterior motive behind the decision to name PMC as an additional defendant. This factor could support an inference that defendants used the litigation as an opportunity to harass PMC. For example, PMC reports that Water knowingly scheduled a deposition of Laurence Purcell, PMC's most knowledgeable person, at a time when his wife was undergoing daily chemotherapy for brain cancer. While Clark claims the only reason the parties could not stipulate to a continuance was because counsel for Everpure would not agree to a two-week extension of the discovery and motion cut-off dates, this discrepancy creates a factual dispute, which, in light of the standard of review that we must apply, need not be resolved at this stage of the proceedings.[9]

### III. *The Settlement Rule*

Finally, defendants argue that the settlement rule bars PMC's action for malicious prosecution. They cite to multiple cases purporting to set forth that a negotiated settlement should bar this action. However, PMC's contention that there was never any negotiated settlement between PMC and Water is persuasive. The only evidence offered by defendants in this regard is the document called "Settlement Agreement" dated

---

[9] Water also renews its argument that the voluntary dismissal of its antitrust claims negates the element of malice. For the reasons stated above, we are unmoved by this contention.

18

February 1, 2013. The following words of limitation appear above the PMC signature block: "[PMC] hereby acknowledges receipt of this Settlement Agreement and hereby agrees to be bound by the terms of the confidentiality agreement as set forth in Paragraph 7." The sole reference to PMC in the substance of the document states that PMC understands the reaffirmation of the Termination Agreement between Everpure and Water "is a material part of the consideration necessary to reach an overall settlement of the Lawsuit and dismissal of the appeal." By then, the Ninth Circuit had already dismissed Water's appeal as to PMC under its order of January 25, 2013. Thus, PMC's representations that it signed the Settlement Agreement merely to indicate its assent to keeping its terms confidential is a reasonable reading of the contract. To the extent there is any doubt or ambiguity about the construction of any words of limitation in the agreement, the doubt is to be resolved in favor of PMC as it was not the drafter of the document. (Civ. Code, § 1654.) Thus, we do not find the Settlement Agreement to bar the instant action for malicious prosecution.

## DISPOSITION

The order denying the special motion to strike the complaint under section 425.16 is affirmed.

_____
Dondero, J.

We concur:

_____
Margulies, Acting P.J.

_____
Becton, J.*

_____

* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19